IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD PFIEFFER | * | |
| v. | * | Civil No. CCB-11-3307 |
| SCHMIDT BAKING CO., INC. | * | |

******

**<u>MEMORANDUM</u>**

Plaintiff Ronald Pfieffer ("Pfieffer") filed this ERISA action claiming that defendant Schmidt Baking Co., Inc. ("Schmidt"), his former employer, was improperly offsetting the pension payments he was due under the company's pension plan with the pension benefits he was receiving from his union. After a year of litigation, Schmidt reversed its position on the viability of the offset, began paying pension benefits without the offset, and paid Pfieffer all of the back pension he claimed he was owed. The parties continue to dispute, however, whether Pfieffer's counsel may receive attorneys' fees. Pfieffer argues that his lawsuit was the substantial cause of Schmidt's decision to provide him relief, while Schmidt maintains that litigation with its third-party service provider, Buck Consultants, LLC ("Buck"), led to its decision.[1] Now pending before the court is a motion filed by Pfieffer requesting (1) court consideration of sealed settlement communications, (2) discovery from Schmidt and the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union AFL-CIO, CLC Local 68, (3) an extension of time to file a reply brief in support of his motion for attorneys' fees, and

---

[1] According to Schmidt, upon review of discovery produced during the Buck litigation, it determined the relevant documents had been destroyed in a fire at Schmidt's facility and, for that reason, decided to begin paying pension benefits without the offset.

1

(4) a scheduling conference. For the reasons stated below, the motion will be granted in part—as to Pfieffer's request for an extension of time to file the reply brief—and otherwise denied.

## BACKGROUND

The background of this case is summarized in the court's August 20, 2013, Memorandum, and need not be repeated in its entirety here. (*See* ECF No. 54.) The parties ask the court to infer whether Pfieffer's lawsuit was the substantial cause of Schmidt's decision to provide relief based on the following timeline of events. On March 9, 2010, Schmidt filed a lawsuit against its third-party service provider, Buck, after it discovered that Buck was not applying a "union offset provision"[2] in calculating benefits. (*See Schmidt Baking Co., Inc. et al. v. Buck Consultants, LLC*, No. BEL-10-598, Compl., ECF No. 1.) The parties eventually settled, and the case was dismissed on June 19, 2012.

Pfieffer filed the current action against Schmidt on November 17, 2011. A settlement conference was scheduled for September 17, 2012. Pursuant to the settlement conference order, on August 16, 2012, Pfieffer sent Schmidt a written demand. Schmidt responded to the demand on August 27, 2012. On September 14, 2012, Pfieffer replied, and consented to postpone the settlement conference until October 17, 2012. On October 5, 2012, however, Pfieffer received notice from Schmidt that he would be receiving all the relief requested by his lawsuit.

## ANALYSIS

A district court may award attorneys' fees in an ERISA case if the party (1) "achieved 'some degree of success on the merits'" and (2) is entitled to an award under the five *Quesinberry* factors. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634–35 (4th Cir. 2010)

---

[2] Schmidt believes that its Pension Plan and Trust—in which Pfieffer participates—contained a "union offset provision" permitting it to offset a participant's pension benefits with the amount he receives under a separate union pension plan.

(citation omitted); *see also Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc). In arguing that he has achieved some success on the merits, the ERISA plaintiff may assert a "catalyst theory," "which allows for attorney's fees when a party obtains relief, through settlement or otherwise, without an adjudication on the merits." *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 898 F. Supp. 2d 883, 897 (D. Md. 2012), *aff'd*, __ Fed. App'x __, No. 12-2297, 2013 WL 5545940 (4th Cir. 2013) (per curiam).[3] The plaintiff bears the burden of establishing that the lawsuit was a significant cause of the defendant's change in position. *Id.* at 900. "The strongest evidence of causation [is] an inference made from the chronology of events." *Id.* (citation and internal quotation marks omitted). Nevertheless, "[a] simple showing that defendant changed behavior following the filing of the lawsuit may not . . . suffice to establish causation," and the "[d]efendant may still produce evidence suggesting, for example, that the action that led to a grant of relief was begun prior to the lawsuit, and was merely completed after the filing of the suit." *Id.* "Generally, however, if defendant had ample opportunity to remedy the plaintiff's grievances, but did so only after the suit was filed, causation was properly inferred." *Id.* (citation and internal quotation marks omitted).

Here, although it may be a close question, the court finds the chronology of events provides sufficient evidence of causation, and Pfieffer has satisfied his burden of proof. The court agrees with Pfieffer that Schmidt had ample opportunity to provide relief before his lawsuit

---

[3] Both parties assume the viability of catalyst theory in the context of ERISA cases. In *Feldman's*, the court determined "the Fourth Circuit [has] yet to explicitly apply the 'catalyst theory' in the ERISA context," yet explained that several district courts have implicitly embraced the theory. 898 F. Supp. 2d at 897; *see also Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 415–17 (4th Cir. 2007) (applying the catalyst theory to a fee-shifting provision of the Surface Mining Control and Reclamation Act). Likewise, the Second Circuit has stated that "in evaluating ERISA fee applications, the catalyst theory remains a viable means of showing that judicial action in some way spurred one party to provide another party with relief, potentially amounting to success on the merits." *Scarangella v. Group Health, Inc.*, 731 F.3d 146, 155 (2d Cir. 2013).

was filed as well as during the lawsuit.  Yet, Schmidt only offered relief after suit was filed and the parties exchanged letters in preparation for a settlement conference.  Schmidt offers an affidavit from Vice President of Human Resources Don Reginald Mann stating that the litigation with Buck led to its decision to provide Pfieffer relief; but that claim is belied by the fact that the parties continued to exchange settlement communications in the months following the dismissal of the Buck case.  (*See* Decl. of Mann, ECF No. 65-3.)  Thus, the court concludes that Schmidt does not adequately rebut the inference of causation drawn from the chronology of events.  Having reached the conclusion that Pfieffer's lawsuit was a substantial cause of Schmidt's decision to provide relief, the court need not consider confidential settlement communications.[4]  Nor will the court order discovery or hold a scheduling conference.  The court will, however, allow Pfieffer fourteen days to file a reply brief in support of his motion for attorneys' fees.[5]

## CONCLUSION

For the reasons stated above, Pfieffer's motion will be granted in part and denied in part.  A separate order follows.

February 25, 2014                                                                      /s/
Date                                                                          Catherine C. Blake
                                                                               United States District Judge

---

[4] Although it is proper to consider the fact that the letters were filed, and the dates they were filed, the court will not consider their contents.

[5] Counsel are reminded to consult with one another before requesting an extension with the court.  *See* Local R. 105.9.  Parties on both sides complain that they were not notified before opposing counsel filed a motion for extension of time.