# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| RONALD PFIEFFER | * | |
| v. | * | Civil No. CCB-11-3307 |
| SCHMIDT BAKING CO., INC. | * | |

## MEMORANDUM

Plaintiff Ronald Pfieffer filed this ERISA action claiming that defendant Schmidt Baking Co., Inc. ("Schmidt"), his former employer, was improperly offsetting the pension payments he was due under the company's pension plan with the pension benefits he was receiving from his union. After a year of litigation, Schmidt reversed its position on the viability of the offset, began paying pension benefits without the offset, and paid Pfieffer all of the back pension he claimed he was owed.

The parties then began a protracted dispute regarding attorneys' fees. Pfieffer filed a motion for attorneys' fees on March 1, 2013. He sought an award of $61,590.00 in fees and $361.72 in costs. He also sought a 50% enhancement of fees, for a total fee award of $92,385.00. In its opposition filed October 8, 2013, Schmidt argued against any award of attorneys' fees, claiming that litigation with its third-party service provider—and not Pfieffer's lawsuit—was the substantial cause of its decision to provide relief. Rather than file a reply, on October 23, 2013, Pfieffer filed a motion requesting, among other things, court consideration of confidential settlement communications and discovery. On February 25, 2014, the court determined Pfieffer's lawsuit was a substantial cause of Schmidt's decision to provide relief.

1

Consequently, the court did not need to consider confidential settlement communications or order discovery. Instead, the court ordered Pfieffer to file a reply brief in support of his motion for attorneys' fees within fourteen days. Pfieffer filed his reply on March 11, 2014, indicating that he now seeks an award of $40,510.50 in fees and $361.72 in costs. He continues to seek a 50% enhancement of fees, for a total fee award of $60,765.75.

The motion for attorneys' fees is finally ripe. The parties have fully briefed the issues, and no oral argument is necessary. *See* Local R. 105.6. For the reasons stated below, attorneys' fees in the amount of $35,388.00 and costs in the amount of $361.72[1] will be awarded. The court will not order any enhancement of fees.[2]

## ANALYSIS

### A. Entitlement to Fee Award

"A district court in its discretion may allow a reasonable attorney's fee and costs of action to either party in an ERISA action," *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 221–22 (4th Cir. 2011) (citation and internal quotation marks omitted), so long the party (1) "achieved 'some degree of success on the merits'" and (2) is entitled to an award under the five *Quesinberry* factors. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634–35 (4th Cir. 2010) (citation omitted); *see also Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc). The *Quesinberry* factors, which are "'general guidelines' rather than a 'rigid test,'" include "(1) [the] degree of opposing parties' culpability or bad faith; (2) [the] ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award

---

[1] Plaintiff's counsel request reimbursement for postage and the filing fee. The court is satisfied that those costs are reasonable, and will award the full amount of costs requested.

[2] On March 20, 2014, after the motion for attorneys' fees became ripe, Schmidt filed a motion to disregard new facts and arguments presented for the first time in Pfieffer's reply brief. Schmidt's motion will be granted, as consideration of the new facts and arguments would not alter the court's analysis.

of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Williams*, 609 F.3d at 635–36 (quoting *Quesinberry*, 987 F.2d at 1029).

Pfieffer has achieved at least some degree of success on the merits. As determined in the court's February 25, 2014, Memorandum opinion, Pfieffer's lawsuit was a substantial cause of Schmidt's decision to provide relief. Moreover, Pfieffer obtained all the relief he sought in his complaint; indeed, Schmidt reversed its position on the union offset provision, and paid him all of the back pension he claimed he was owed plus interest. *Cf. Flores v. Life Ins. Co. of N. Am.*, 770 F. Supp. 2d 768, 775 (D. Md. 2011) (citation and internal quotation marks omitted) (suggesting that the plaintiff achieves at least some degree of success on the merits when his settlement amounts to "the very prayer for relief" sought in the complaint).

Next, the court agrees with Pfieffer that the *Quesinberry* factors favor a fee award. First, Schmidt evidenced some culpability by denying benefits despite the fact that it had not reviewed—or even had in its possession—the relevant pension plan documents. Schmidt explains that it believed a "union offset provision" was included in Pfieffer's pension plan because a different pension plan included the provision. Upon review of discovery produced during litigation with its third-party service provider, however, it determined the relevant pension plan documents had been destroyed in a fire at Schmidt's facility. In its October 5, 2012, letter to Pfieffer, it stated:

> We have just completed the review of the last documents produced by the Plan's former service provider. As a result of this review, we determined that the previous offset of your Plan benefit, although logical to prevent pension payment

3

> "double-dipping," and although intended by the relevant parties, is not reflected in the various files and documents to the extent we would prefer.

(Oct. 5, 2012, Letter to Pfieffer, ECF No. 41-11.) Thus, it appears that Schmidt withheld Pfieffer's benefits based only on its belief that his pension plan included the union offset provision. *Cf. Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995) (noting that the district court had found Dynamic Engineering, Inc. acted in bad faith when it "failed to determine whether Wheeler might be covered under the 1993 plan, examining coverage only under the 1994 Key Care II plan"); *see also Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 898 F. Supp. 2d 883, 908 (D. Md. 2012) (citations and internal quotation marks omitted) (stating that "a party can be found culpable where a plan's decision is discernibly against the weight of the evidence . . . or where a plan administrator performs a cursory, inadequate investigation of a claim"), *aff'd*, 541 Fed. App'x 322 (4th Cir. 2013). Second, Schmidt concedes that it has the resources to satisfy an award of fees. Third, having found some culpability on the part of Schmidt, the court is satisfied that an award of attorneys' fees would deter other employers from denying benefits prior to a thorough review of the relevant pension plan documents. The court cannot conclude, however, that the fourth factor weighs definitively in favor of a fee award. Although Pfieffer's lawsuit may incidentally benefit other participants in the pension plan, this was not the apparent goal of the litigation. *Cf. Ferguson v. United of Omaha Life Ins. Co.*, __ F. Supp. 2d __, No. WMN-12-1035, 2014 WL 956886, at *14 (D. Md. 2014). The fifth factor favors a fee award because, as stated above, Pfieffer received all the relief sought in his complaint. *See Feldman's*, 898 F. Supp. 2d at 910–11. The court is satisfied that, on balance, the *Quesinberry* factors support an award of fees. Thus, in sum, because they achieved some degree of success on the merits and are entitled to an award under the *Quesinberry* factors, plaintiff's counsel may recover reasonable fees and costs.

B. **Amount of Fees**

Having concluded that attorneys' fees are appropriate in this case, the court decides the amount of fees to award by calculating the lodestar, or "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Int'l Painters and Allied Trades Indus. Pension Fund v. DLC Corp., Inc.*, No. WDQ-11-1938, 2012 WL 1229491, at *7 (D. Md. Apr. 11, 2012).[3] The court will use the following hourly rates, which are unopposed and fall within accepted rates for lawyers with comparable experience: $300.00 for Victoria L. Grace, $190.00 for James A. H. Corley, $350.00 for Adam M. Spence, and $190.00 for Maya G. Yacoub.[4] *See* Local R., App. B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases.

Turning to the number of hours claimed, Schmidt puts forth eight arguments as to why certain hours were not reasonably expended and, thus, must be deducted from the lodestar calculation. The court will address each argument in turn. First, Schmidt opposes hours claimed for the administrative appeal. Because Pfieffer concedes in his reply that those hours are not compensable, the court will deduct 3.2 hours from Grace's time and 5.4 hours from associate time.

Second, Schmidt argues that Pfieffer should not recover fees for hours spent getting new attorneys "up to speed" on the case. It requests a reduction of 9.9 hours on this basis. Upon review of the disputed time entries, the court determines 7.2 hours of associate time and 0.3 hours of Spence's time should have been excised as a matter of billing discretion. An associate devoted 7.2 hours to reviewing 134 email messages. This work appears duplicative of other

---

[3] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.
[4] The court will refer to Corley and Yacoub, together, as "the associates."

attorneys' work, and in any event, plaintiff's counsel indicate that they will no longer seek compensation for this time. Spence claims 0.3 hours for reviewing pleadings and a scheduling order, and plaintiff's counsel also concede that this time is not compensable. As for the remaining 2.4 hours identified by Schmidt, the court is satisfied that those hours were properly spent discussing strategy with co-counsel, rather than simply telling new counsel about the case. In sum, the court will subtract only 7.2 hours from associate time and 0.3 hours from Spence's time.

Third, according to Schmidt, the court should subtract 36.9 hours from the fee award because of inefficiencies caused by overstaffing.[5] Examining the disputed time entries, the court finds that only some meetings reflect overstaffing and were inappropriately "double-billed." As explained in the Local Rules:

> Generally, only one lawyer is to be compensated for client, third party and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer. Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

Local R., App. B(2)(d). Pfieffer, therefore, is correct that more than one lawyer may claim hours for certain intra-office meetings and phone calls, which are related to work organization and litigation strategy. The court agrees with Pfieffer that the majority of the challenged entries contain sufficient detail to allow compensation for multiple attorneys on this basis. Thus, the court will subtract only 3.9 hours from associate time and 0.7 hours from Spence's time.

---

[5] To the extent that Schmidt claims that Pfieffer's counsel overbilled by preparing for a settlement conference that did not occur, this argument cannot stand. It was certainly reasonable for Pfieffer's lawyers to prepare for a scheduled settlement conference. Furthermore, as noted by Pfieffer, "the reason the conference never occurred is that Defendant, not Plaintiff, requested to first reschedule, then postpone, then cancel the conference altogether." (Pl.'s Reply, ECF No. 73, at 6.)

Fourth, Schmidt claims that Pfieffer may not recover fees for the 4.9 hours spent performing administrative tasks. Plaintiff's counsel's time records show that an associate claims 2.5 hours for purely administrative tasks, such as electronically filing documents and preparing a package. The court, therefore, will deduct 2.5 hours from associate time, as fees for administrative work are generally not recoverable. *See Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012) (explaining that fees for administrative or clerical work—whether performed by attorneys or by paralegals—are not recoverable). As for the remaining 2.4 hours identified by Schmidt, Pfieffer is correct that they were not spent only on administrative tasks; rather, the 2.4 hours were spent drafting and reviewing letters, in addition to scanning and transmitting them. Pfieffer concedes that, of the 2.4 hours, 1.2 hours were dedicated only to the administrative work. Accordingly, the court will reduce associate time by another 1.2 hours.

Fifth, Schmidt objects to the 22.5 hours dedicated to researching "basic" ERISA principles. The court agrees with Schmidt that four of the challenged time entries are simply too vague to support an award of fees, so that the lawyers fail to meet their burden to provide sufficiently detailed records. *See Spencer v. General Elec. Co.*, 706 F. Supp. 1234, 1244 (E.D. Va. 1989) (stating that fee applicants bear the burden of providing sufficient detail in their records to explain and support their fee requests). Those entries indicate broadly that "legal research" was conducted without stating the subject of the research. As for the remaining hours, however, the court is satisfied that they are reasonable to ensure the lawyers are up to date on ERISA case law and in light of the fact that this case had some complexities. The court will reduce associate time by 3.7 hours and Grace's time by 3.5 hours.

Sixth, Schmidt asks the court to subtract 8.8 hours from the fee award, arguing that the work performed was unrelated to the present case. Although Pfieffer disagrees that the work was unrelated to his claims against Schmidt, he concedes the 8.8 hours in the interest of streamlining the attorneys' fees dispute and judicial economy. The court will subtract 3.2 hours from Spence's time and 5.6 hours from associate time.

Seventh, Schmidt challenges the 13.7 hours spent on (1) discovery that was barred as a matter of law and (2) improper disclosure of settlement communications. The court agrees that a reduction is warranted for activities related to discovery on attorneys' fees.[6] While the court will not go so far as to say those activities were barred as a matter of law, the court did determine on two separate occasions[7] that discovery was unnecessary to resolve the attorneys' fees dispute. Because some of the hours challenged by Schmidt are already deducted from the fee award for other reasons, only 8.7 hours will be deducted from associate time.

Eighth, Schmidt asserts that an excessive amount of time is claimed for work related to the fee petition, and asks the court to award no more than 15 hours for this work. Recognizing that the attorneys' fees motion was vigorously disputed and required specialized research into the unsettled "catalyst theory" discussed in the court's February 25, 2014, Memorandum, the court still finds that a slight reduction is warranted, given the Supreme Court's admonishment that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In this case, 42.6 hours were dedicated to the attorneys' fees motion,

---

[6] To the extent, however, that Schmidt challenges hours devoted to discovery outside the context of the fee petition, the court will not order a reduction of hours. Some limited discovery in advance of the scheduled settlement conference was reasonable.

[7] Pfieffer was first denied discovery on August 21, 2013. On that day, the court dismissed the case as moot but retained jurisdiction over the attorneys' fees dispute. In its Memorandum opinion, the court granted Schmidt's motion to strike Pfieffer's discovery requests, although it did so without prejudice to the renewal of Pfieffer's requests if they became necessary in connection with the fee dispute.

which represents more than a fifth of the total time devoted to this litigation. Moreover, a slight reduction is appropriate in light of the fact that a significant portion of the fee petition appears to have been drafted by Spence, who has 17 years of experience. *Cf. Chapman v. Ourisman Chevrolet Co., Inc.*, No. AW-08-2545, 2011 WL 2651867, at *15 (D. Md. July 1, 2011) (reducing hours devoted to the attorneys' fees petition based on the lawyers' extensive experience). The court will reduce the hours devoted to the fee petition by 15%, so that 2.5 hours will be subtracted from Spence's fee and 3.9 hours will be subtracted from the associates' fee.

The court notes that, according to the Fourth Circuit, the "*Johnson* factors"[8] may properly be used to "inform" and sometimes "adjust" the calculation of the lodestar number. *See McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013). The court considers the *Johnson* factors "in conjunction with the lodestar methodology" and, "to the extent that any of these factors already has been incorporated into the lodestar analysis, [it does] not consider that factor a second time." *E. Associated Coal Corp. v. Dir., Office of Workers' Compensation Programs*, 724 F.3d 561, 570 & n.5 (4th Cir. 2013). Here, the court has considered all the *Johnson* factors in determining reasonable attorneys' fees, and finds no need to adjust the lodestar amount.

---

[8] The *Johnson* factors are:

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citation omitted).

Finally, the court determines an enhancement of fees is unwarranted. Enhancements to the lodestar figure "may be awarded in rare and exceptional circumstances." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). The fee applicant has the burden to prove the enhancement is necessary and must offer "specific evidence" supporting the award. *Id.* at 553. Pfieffer proffers no such evidence here. Rather, he argues for enhancement of overall fees based on the success of his lawyers, who took this case on contingency, as well as the benefits conferred upon not only him but also others similarly situated. Although counsel's success may be commendable, the court cannot conclude that it is so exceptional as to warrant a rare upward adjustment. Nor will the court enhance plaintiff's counsel's fees based on the amount of effort dedicated to the attorneys' fees dispute, which the court already took into account in determining the reasonable hours dedicated to the fee petition. Accordingly, Pfieffer's counsel's request for a 50% enhancement will be denied.

## CONCLUSION

For the reasons stated above, the court will award attorneys' fees in the amount of $35,388.00 and costs in the amount of $361.72. A separate order follows.

March 28, 2014  /s/
Date  Catherine C. Blake
United States District Judge